USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/11

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------x
WORLDHOMECENTER.COM, INC.,              :
                                        :
                        Plaintiff,      :    10 civ. 3205 (BSJ)
                                        :    **Memorandum & Order**
            v.                          :
                                        :
FRANKE CONSUMER PRODUCTS, INC.          :
                                        :
                        Defendant.      :
---------------------------------------x

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Defendant Franke Consumer Products, Inc. ("Franke") moves to dismiss the amended complaint of Plaintiff WorldHomeCenter.com ("WHC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.

## BACKGROUND[1]

Plaintiff WHC is a New York-based online retailer of home improvement products, servicing consumers through web sites and via telephone. (Am. Compl. ¶ 6.) Defendant Franke is a Delaware-incorporated manufacturer and seller of sinks, faucets, plumbing accessories and kitchen accessories. Franke sells products directly to consumers via its own website and through authorized distributors. (Am. Compl. ¶ 7.) This action was

---

[1] The following facts are taken from the allegations in Plaintiff's amended complaint and are assumed to be true for the purposes of this decision only.

previously filed in New York State Supreme Court and was removed to this Court under diversity jurisdiction. (Pl. Mem. at 2.)

For several years, WHC has sold Franke products through its website, purchasing them directly from Franke, from exclusive Franke distributors, and from independent distributors for online resale to WHC's customers. (Am. Compl. ¶ 8.)

In late 2007, Defendant Franke instituted a policy known as the Unilateral Suggested Minimum Advertised Price policy, referred to here as "USMAP" or "the Policy." (Am. Compl. ¶ 14.) The Policy, attached to Defendant's motion as Exhibit D and incorporated by reference in deciding this motion, states that a "Franke Consumer Products reseller remains free to establish its own resale prices. However, a reseller may not advertise or otherwise promote Franke products at a Net Price below the USMAP established from time to time by Franke Consumer Products." (Abate Declaration, Ex. D at 1.) The Policy notes that it addresses only issues surrounding the advertisement of prices and though retail prices are suggested, the Policy "does not regulate actual selling prices." (Abate Declaration, Ex. D at 1.) The USMAP Policy makes clear that internet retailers are not permitted to publish prices below the allowed price range anywhere on any website. Further, the Policy prohibits any reseller or distributor from providing Franke products to a

2

reseller who has violated the policy. (Abate Declaration, Ex. D at 3.)

The Policy also outlines consequences to be imposed by Franke on a violating reseller. These consequences include that Franke could temporarily or permanently cease doing business with the violating reseller. (Abate Declaration, Ex. D at 3.)

The Policy includes a question and answer section regarding permissible and impermissible conduct by resellers. Because the Policy only regulates advertised prices, Franke suggests that customers could be advised to call or email to obtain the best price from an internet retailer. Further, resellers are permitted to provide coupons to give internet shoppers a lower actual price at their online checkout. (Abate Declaration, Ex. D at 5-6.)

WHC does not contest that it violated the Policy in early 2009. Plaintiff alleges that, after this violation, Defendant required WHC to sign the USMAP Reseller Reinstatement Agreement. (Am. Compl. ¶ 14.) The agreement, again incorporated by reference to the amended complaint, stated that the reseller (WHC) violated the USMAP policy in February 2009. (Abate Declaration, Ex. E.) In order to induce Franke to continue to do business with WHC, WHC agreed to adhere to the USMAP policy from then on. The agreement specified that further violations would result in permanent termination of the Franke-WHC

3

relationship. The agreement also specifically noted that the Policy was not a price-setting agreement and that WHC remained free to set its own resale prices. (Abate Declaration, Ex. E.)

Though the parties do not specify the details of any violations after the signing of the March 2009 agreement, WHC apparently violated the Policy again. Plaintiff alleges that Franke has refused to ship and fill WHC orders "unless and until Plaintiff complies with Defendant's USMAP policy." (Am. Compl. ¶ 15.) Plaintiff also asserts that Defendant Franke has demanded that its suppliers and distributors also refuse to sell Franke products to WHC. (Am. Compl. ¶¶ 15, 16.) Plaintiff also complains that in retaliation for WHC's violation of the Policy, Franke now refuses to honor warranties on Franke products sold by WHC. To accomplish this, Franke allegedly posted a "warranty disclaimer" on its website advising customers that it will not honor warranties for WHC customers. (Am. Compl. ¶ 29.)

In the Amended Complaint filed May 26, 2010, WHC asserts that Franke's institution of the USMAP policy and March 2009 agreement has restricted its ability as an internet reseller to sell products at a discounted price. Because WHC cannot post its lower prices anywhere on its website, it claims that the USMAP has the effect of forcing WHC to only charge prices according to the Policy. While a traditional store can post lower prices within their own building, an internet retailer

4

cannot do so; its website is essentially its only "storefront." Because of the differences between traditional and online sales, WHC contends that although the Policy purports to only regulate advertised prices, in reality it regulates all prices for internet retailers. WHC further asserts that the Policy was enacted by Franke "to protect its bricks-and-mortar distributors" and that this conspiracy constitutes a violation of various New York state antitrust and general business laws. (Am. Compl. ¶ 13.)

Plaintiff specifically pleads that the implemented USMAP Policy "constitutes vertical price fixing pursuant to New York General Business Law §369-a." (Am. Compl. ¶ 18.) It asserts that because the Policy prevents an online retailer "from even posting the price of Franke products on its own website," WHC has sustained lasting damages and sustained substantial lost profits. (Am. Compl. ¶¶ 20-21.) Plaintiff further asserts that WHC has also committed deceptive trade practices and engages in horizontal price fixing in violation of New York General Business Law ("NYGBL") § 349 (the Deceptive Trade Practice Act, or "DTPA") and NYGBL § 340 (the Donnelly Act). (Am. Compl. ¶¶ 35 – 45.)

## LEGAL STANDARD

A complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if a Plaintiff "fail[s] to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations. See York v. Ass'n of the Bar of the City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002); see also Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). Dismissal under Rule 12(b)(6) is required when a complaint fails to allege sufficient facts to state a claim that is "plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## DISCUSSION

Defendant Franke now moves to dismiss Plaintiff's Amended Complaint in its entirety.

### 1. Plaintiff's Claim of Vertical Price Maintenance

As described above, Plaintiff's core allegation in the Amended Complaint relates to Defendant Franke's USMAP policy. Plaintiff contends that the Policy constitutes vertical resale price maintenance and therefore is an illegal restraint of trade under the Donnelly Act. Put simply, Plaintiff contends that

Defendant has conspired with unnamed "bricks-and-mortar" retailers to prevent internet retailers from offering lower prices through online sales. Franke accomplishes this by instituting a policy that claims to only regulate advertised prices while knowing such restrains disproportionately burden internet sellers.

Under New York's Donnelly Act (and the Sherman Act upon which the New York statute was based), there are two types of antitrust claims: *per se* claims and rule of reason claims. Most trade practices are analyzed under the "rule of reason" standard, which requires a showing that "under the circumstances there is an unreasonable restraint of trade." People v. Rattenni, 81 N.Y.2d 166, 171-72, 613, N.E.2d 155, 158 (N.Y. 1993). To plead a "rule of reason" claim, a plaintiff must allege specifics facts regarding the particular market affected by the alleged restraint as well as the competitive effects of the alleged restraint on that market. See Atkin v. Union Processing Corp., 90 A.D.2d 332, 336, 457 N.Y.S.2d 152, 156 (N.Y. App. Div. 1982). However, certain acts have an effect on trade that is especially "pernicious to competition." As a result, these acts are considered *per se* unreasonable. Rattenni, 81 N.Y.2d at 171-72.

Here, Plaintiff concedes that it has alleged only a *per se* claim.[2] (Pl. Mem. at 19.) Therefore, Plaintiff must establish that *per se* treatment is appropriate.

## A. Per Se Treatment of Vertical Price Fixing post-Leegin

Courts interpreting New York's Donnelly Act have historically relied on interpretations of the federal antitrust statute, the Sherman Act, for persuasive guidance. As the New York Court of Appeals has stated, "Although we do not move in lockstep with the Federal courts in our interpretation of antitrust law, the Donnelly Act-often called a 'Little Sherman Act'-should generally be construed in light of Federal precedent and given a different interpretation only where State policy, differences in the statutory language or the legislative history justify such a result." Anheuser-Busch, Inc. v. Abrams, 71 N.Y.2d 327, 335, 520 N.E.2d 535, 539 (N.Y. 1988)(internal citation omitted).

As stated above, Plaintiff alleges that Defendant's USMAP policy constitutes vertical price fixing and should be considered a *per se* violation of the Donnelly Act. Until recently, courts applying both the Sherman Act and the Donnelly Act had accorded vertical price restraints *per se* treatment under each statute. See George C. Miller Brick Co., Inc. v.

---

[2] Plaintiff states that it is "not in possession at this time of evidence" to support a rule of reason claim "but reserves the right to seek leave to amend as appropriate should evidence later come to light" to allege such a claim. (Pl. Mem. at 19.)

Stark Ceramics, Inc., 2 A.D.3d 1341, 1343, 770 N.Y.S.2d 235 (4th Dept. 2003). However, in 2007, the United States Supreme Court decided in Leegin Creative Leather Prods. V. PSKS, Inc. that vertical price maintenance claims under the Sherman Act would now be subject to the rule of reason analysis. 551 U.S. 877 (2007). While the Court is not aware of any New York state case dealing with vertical price maintenance claims under the Donnelly Act post-Leegin, at least a few federal courts assessing Sherman Act and Donnelly Act claims have applied Leegin to require a rule of reason analysis under both statutes. See Arista Records, LLC v. Lime Group LLC, 532 F. Supp. 2d 556, 570, 581 (S.D.N.Y. 2007); Gatt Communications, Inc. v. PMS Associates, LLC, 2011 WL 1044898 at *4 (S.D.N.Y. March 10, 2011). It is also worth noting that in Leegin, the Supreme Court analyzed an agreement between individual retailers and a manufacturer to set prices and found that it did not have the "manifestly uncompetitive effects" that would warrant *per se* treatment. In contrast, the Franke Policy here is less restrictive because it regulates only advertising, not actual retail prices, as discussed further below.

**B. Per Se Treatment via NYGBL § 369-a**

Perhaps because of the change in federal law post-Leegin, Plaintiff offers an apparently novel theory to establish *per se* liability, relying on NYGBL § 369-a. This statute, entitled

9

"Price Fixing Prohibited," states that "any contract provision that purports to restrain a vendee of a commodity from reselling such commodity at less than the price stipulated by the vendor or producer shall not be enforceable or actionable at law." N.Y. Gen. Bus. Law. § 369-a.

Plaintiff asserts that Defendant has violated NYGBL § 369-a, which they assert makes price fixing illegal under New York state law. Plaintiff pleads that this violation "further constitutes a 'bad act' that is anticompetitive in purpose or effect and supports a cause of action for monopolization or attempt to monopolize under the Donnelly Act." (Am. Compl. ¶ 25.) In its memorandum of law to this Court, Plaintiff explains this theory of liability, noting that "by violating the prohibition against price-fixing embodied in NYGBL § 369-a ... Franke has committed ... [a] violation[] of the Donnelly Act." (Pl. Mem. at 8.) Plaintiff also states that § 369-a evinces a policy preference in New York that vertical price fixing is illegal. In sum, Plaintiff seems to assert two rationales for *per se* treatment of its claim against Franke: 1) illegal conduct under § 369-a warrants *per se* treatment simply because of the underlying violation of the statute, and/or 2) § 369-a demonstrates a policy preference under New York law that should guide courts to decline to follow Leegin when interpreting

10

vertical price fixing claims under the Donnelly Act. (Pl. Mem. at 12.)

Defendant Franke offers two responses to Plaintiff's theories. First, Defendant asserts that Plaintiff's theory offering § 369-a as a basis for Donnelly Act liability is without legal foundation and merely attempts to create a private right of action under § 369-a where none exists. (Def. Mem. at 11-12.) Further, even accepting Plaintiff's theory as plausible, a reading of the plain language of the section demonstrates that while contracts containing price restraints are unenforceable under New York law, there is no mention that such contracts are actually illegal. (Def. Mem. at 12-13.)

Second, Defendant asserts that the USMAP policy regulates advertising, not prices, and therefore does not even qualify as a vertical price control. Therefore, the Court need not consider the effect of Leegin on New York law because it does not concern the kind of non-price restraint at issue here. (Def. Mem. at 14-16.) Finally, if the Court were to find that the policy constituted a price restraint, then Defendants urges this Court to follow Leegin and consider the restraint under the "rule of reason" analysis.

**C. The Rule of Reason Analysis Applies to Plaintiff's Claims**

This Court finds that the rule of reason analysis, not *per se* treatment, should apply to Plaintiff's claim. First, the

11

Court is unconvinced by Plaintiff's main theory, that pleading a violation of § 369-a provides a means to establish *per se* liability under the Donnelly Act. Plaintiff offers no persuasive authority or precedent for this argument. (See Pl. Mem. at. 18.)

Second, Plaintiff's argument that § 369-a evinces a clear policy preference warranting a departure from the prevailing interpretation of the Sherman Act is similarly unpersuasive. Under the plain language of the statute, contracts between supplier and seller to set prices are unenforceable, but not *illegal*. As Defendant correctly points out, many New York statutes plainly declare conduct illegal, including the Donnelly Act itself. If the New York legislature had intended to make such contracts illegal, it plainly could have done so. This Court will not deem contracts unlawful in the face of the plain language of a statute. Further, a recent New York State Supreme Court decision considering the same issue found that under the plain language of § 369-a, contracts to set prices are unenforceable, not illegal. People of the State of New York v. Tempur-Pedic Int'l Inc., No. 400837/10, 2011 WL 198019 at *6 (Sup. Ct. N.Y. Cty. Jan. 14, 2011).

Further, this Court finds that the Policy does not actually constitute a vertical price restraint. Therefore, even if New York courts were to find that Leegin did not apply to Donnelly

12

Act claims, *per se* treatment would not be appropriate in this case because there is no agreement between supplier and reseller to establish a vertical price restraint. The Policy at issue here and the March 2009 agreement plainly discuss advertised prices, not resale prices. Unlike the prior cases cited by Plaintiff where an advertising policy was held to restrain prices, the USMAP policy here provides internet retailers with more than one way to communicate lower prices to clients, either by allowing customers to call or email for a price quote or by offering a coupon to be applied at checkout. (See Pl. Mem. at 13.) Further, the policy applies to all retailers, not just online sellers. While the Court recognizes that the policy may burden internet retailers slightly more than "brick and mortar" sellers, Franke offers internet retailers viable strategies to provide online customers with reduced prices. Numerous courts recently considering similar policies have treated such policies as regulating advertised prices, not the resale prices themselves. See Campbell v. Austin Air Sys., Ltd., 423 F. Supp. 2d 61, 69-70 n.6 (W.D.N.Y. 2005); Blind Doctor, Inc. v. Hunter Douglas, Inc., 2004 U.S. Dist. LEXIS 18480 at *6 (N.D. Cal. Sept. 7, 2004). The Tempur-Pedic Court also reached the same conclusion in finding that a similar advertising policy did not violate § 369-a, noting that the policy there "is not a contract

13

to restrain discounting, only advertising of discounting." Tempur-Pedic, Slip. Op. at 2.

For these reasons, this Court finds that Plaintiff's claim for vertical price maintenance should be analyzed under the rule of reason standard. Because Plaintiff admits that it has not plead a rule of reason claim, the claim of vertical price maintenance is dismissed.

### 2. Horizontal Price Maintenance Claim

Plaintiff additionally pleads a claim for horizontal price maintenance against Defendant Franke. It alleges that because Franke also sold its products directly to consumers, Franke's USMAP and warranty disclaimer policies constitute a conspiracy among actual competitors to fix prices, known as horizontal price maintenance. Horizontal price agreements assessed under the Donnelly Act are subject to *per se* treatment. See Rattenni, 81 N.Y.2d at 159.

To state a claim for horizontal price maintenance, a Plaintiff must allege the existence of a conspiracy between competitors to set prices. See In re Medical X-Ray Antitrust Litigation, 946 F. Supp. 209, 215-16 (E.D.N.Y. 1996)(internal quotations omitted). As explained above, this Court finds that there was no agreement to fix prices here because the Policy regulated advertised prices, not resale prices. Further, Plaintiff did not plead with specificity any alleged conspiracy

14

between competitors to set prices, as required to state a claim for horizontal price maintenance. Plaintiff only alleges that the policy was instituted to benefit "brick and mortar" retailers. This is insufficient to state a plausible claim for horizontal price maintenance.

Finally, Defendant is correct in pointing out that even if Plaintiff had plead a plausible claim for horizontal price maintenance, where a manufacturer sells its products both through distributors and independently, price restraints are treated as vertical agreements, and as such are generally analyzed under the rule of reason analysis. Electronics Communications Corp. v. Toshiba America Consumer Products, 129 F.3d 240, 243-44 (2d Cir. 1997). Therefore, a rule of reason analysis would apply if Plaintiff had plead a plausible horizontal price maintenance claim. As a result, Plaintiff has failed to plead facts establishing a plausible claim for horizontal price maintenance and this claim is dismissed.

### 3. Plaintiff's Claim for Tortious Interference

Plaintiff next pleads a claim for tortious interference with contract, alleging that "Plaintiff had many long standing relationships with its suppliers that were deliberately disrupted by Franke, including ... MDC Trumbull, Ferguson and Great Neck Plumbing Supply, among several others who were advised by Franke not to sell Franke products to Plaintiff."

(Am. Compl. at ¶ 58.) To state a claim for this cause of action, a Plaintiff must show "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; (5) and damages resulting therefrom." Williams v. Citigroup, Inc., 2009 WL 3682536 at *8 (S.D.N.Y. Nov. 2, 2009)(internal quotations omitted).

Under New York law, although such claims are to be construed liberally, a plaintiff must specifically plead the existence of a valid contract and provide some details about its terms and its breach to sustain a claim at the motion to dismiss stage. As a court in this district has noted, "an allegation of interference with contractual relations is insufficient where the plaintiff does not refer to a valid, existing contract or any terms of contract with a third party." G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 253 (S.D.N.Y. 2001). See also Martian Entertainment, LLC v. Harris, 12 Misc. 3d 1190(A), 824 N.Y.S.2d 769(Table) at *7-*8 (N.Y. Sup. 2006).

Here, Plaintiff only offers the names of three entities that it "had many contracts with." (Am. Compl. ¶ 57.) It does not specify whether contracts were actually breached. It does not provide details as to the terms of any agreement and does

16

not specify when and how any alleged breach occurred. New York law is clear that, even accepting all plead facts as true, such conclusory, vague allegations cannot state a claim for tortious interference with contract. Therefore, this claim is dismissed.[3]

### 4. Plaintiff's Claim for Deceptive Trade Practices

In the Amended Complaint, Plaintiff alleges that Defendant's institution of the warranty disclaimer policy against offending retailers constitutes a violation of NYGBL § 349, known as the Deceptive Trade Practices Act ("DTPA"). Plaintiff alleges that because § 369-b declares policies disclaiming warranties unenforceable in New York, Franke misleads consumers when it states on its website that it will not honor certain warranties when it is in fact required to honor them by law.

To state a claim under this section, a plaintiff must allege that "first, the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Bildstein v. Mastercard Int'l Inc., 329 F. Supp. 2d 410, 413 (S.D.N.Y. 2004). Further, a plaintiff must

---

[3] To the extent Plaintiff's claim could also be construed as a claim for tortious interference with prospective economic advantage, Plaintiff has failed to claim the malicious conduct, wrongful act, or extreme economic pressure needed to sustain such a claim. See Friedman v. Coldwater Creek, Inc., 321 Fed. Appx. 58, 60 (2d Cir. 2009).

also show "actual injury to recover under the statute, though not necessarily pecuniary harm." Id. at 413.

The Court finds that Plaintiff has failed to state a claim under the DTPA because Plaintiff cannot specify any consumer who was actually injured as a result of the policy. Under New York law, "it is well established ... that the claimed deception itself cannot be the only injury." Executive Risk Indem. Inc. v. Icon Title Agency, LLC, 739 F. Supp. 2d 446, 452 (S.D.N.Y. 2010). Plaintiff's only identified injury seems to be alleged "loss of profits, business interference, damage to reputation and substantial legal fees" incurred by WHC itself. (Am. Compl. ¶ 39.) Plaintiff has not alleged any injury to an actual consumer. Further, WCH's plead injury is vague and speculative. Moreover, Plaintiff offers no factual basis on which this Court could conclude that any of the alleged damages incurred by Plaintiff was actually caused by Defendant's allegedly deceptive practice.

Additionally, Plaintiff has failed to specify any conduct that was actually misleading to the consuming public. To assert liability under this section, some showing of "mendacity" is required; "mere anticompetitive conduct will not suffice." Leider v. Ralfe, 387 F. Supp. 2d. 283, 295 (S.D.N.Y. 2005). Plaintiff has not alleged any behavior that is plausibly deceptive to consumers.

18

For these reasons, Plaintiff's claim under the DTPA is dismissed.

### 5. Injunctive and Declaratory Relief under §§ 369-a and 369-b

Finally, Plaintiff seeks an injunction prohibiting Defendant from "(a) implementing and enforcing its USMAP policy and (b) denying warranties to any purchasers of its products from any distribution source." (Am. Compl. ¶¶ 61-63.) Further, Plaintiff asks this Court for a declaration that Defendant's USMAP policy and policy of refusing to honor warranties are void and unenforceable under NYGBL § 369-a and § 369-b. (Am. Compl. ¶¶ 46-50.) In its brief to this Court, Plaintiff explains that a declaratory judgment can "resolve whether the Franke [USMAP] and warranty disclaimer policies violated NYGBL 369-a and 369-b" so that "from that footing ... the Court may proceed to determine whether those violations amount to violations of the Donnelly Act and Unfair Trade Practices Act." (Pl. Mem. at 23-24.) As stated above, this Court has found that Plaintiff has failed to state causes of action for any of its antitrust or NYGBL claims. Therefore, neither a declaratory judgment nor injunctive relief is appropriate in this case, and these claims are dismissed.

### 6. Leave to Replead

Although Plaintiff does not explicitly request leave to replead in the event its claims were dismissed, it does attempt

19

to "reserve the right to seek leave to amend" in its memorandum of law to this Court. For this reason, this Court dismisses the Amended Complaint without prejudice and grants Plaintiff WHC leave to replead within thirty days of the entry of this order. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 1998 WL 647167 at *6 (S.D.N.Y. Sept. 28 1998). Failure to file a second amended complaint within 30 days will result in the closing of the case.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         June 22, 2011

20